## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**CHAD DOUGLAS KIRBY,**              :

       **Petitioner**              :    **CIVIL ACTION NO. 3:13-1836**
                                             **(Judge Mannion)**
               **v**              :

**SUPERINTENDENT, STATE**              :
**CORRECTIONAL INSTITUTION**
**AT PITTSBURGH, et al.,**              :

      **Respondents**              :


### MEMORANDUM[1]

    Chad Douglas Kirby, an inmate presently confined at the State Correctional Institution, Camp Hill, Pennsylvania, filed this counseled habeas corpus petition pursuant to 28 U.S.C. §2254. (Doc. 1, petition). He attacks a conviction from the Court of Common Pleas for Franklin County, Pennsylvania. Id. For the reasons that follow, the Court will deny the petition.

## I.   Background

    The following background has been extracted from the Pennsylvania

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

Superior Court's October 10, 2012, Memorandum Opinion reversing the trial

court's grant of a new trial. (Doc. 1-1, Commonwealth v. Kirby, No. 435 MDA

2012, Superior Court Opinion at pp. 15-19).

> Kirby was arrested on August 13, 2009, and charged with both
> voluntary manslaughter and involuntary manslaughter[2] in the
> shooting death of his neighbor Andrew Buttermore (Buttermore).
> The case proceeded to a jury trial. At trial, Kirby and various
> neighbors testified that Kirby and Buttermore got into a fight
> outside of Kirby's home. Following the physical altercation, Kirby
> retreated inside of his home, while Buttermore remained in Kirby's
> yard, yelling and throwing items. At some point, Kirby exited his
> home brandishing a handgun in an attempt to scare away
> Buttermore. Buttermore, armed with an aluminum baseball bat,
> began breaking items on Kirby's porch. Kirby returned to his
> house, put the handgun away, and loaded his shotgun. Kirby
> testified that while in the hallway of his home, he heard the sound
> of glass breaking, saw Buttermore at a window and fired. It was
> established at trial that Buttermore had been killed by a single
> gunshot wound to his back. Trial counsel conceded that Kirby fired
> the shot that killed Buttermore, but did so justifiably, out of a
> reasonable fear for the safety of himself and his children.[3]

---

[2] 18 Pa.C.S. §§2503(a)(1), 2504(a).

[3] "The use of force upon or toward another person is justifiable when the
actor believes that such force is immediately necessary for the purpose of
protecting himself against the use of unlawful force by such other person on
the present occasion." 18 Pa.C.S. §505(a). However, the use of deadly force
is limited to situations where an actor has a reasonable belief that deadly force
is "immediately necessary to protect against death, serious bodily injury,
kidnapping or sexual intercourse compelled by force or threat." 18 Pa.C.S.
§505(b)(2).

Similarly, the use of deadly force is justifiable to protect a third person

On October 8, 2010, following a five-day trial, the jury rejected Kirby's justification argument and found him guilty of voluntary manslaughter.[4] On December 17, 2010, Kirby was sentenced to a term of 72 to 144 months incarceration.

Kirby filed several post-sentence motions, both through trial counsel, who eventually withdrew representation, and through newly-hired appellate counsel. Kirby's motions raised substantive claims, as well as claims of trial counsel's ineffectiveness. On April 15, 2011, the trial court held a hearing on all of the claims raised by Kirby. At the hearing, trial counsel testified, and the court heard brief arguments from appellate counsel and the District Attorney.

On May 27, 2011, the trial court entered an order vacating Kirby's judgment of sentence and granting him a new trial on the basis that trial counsel was ineffective for failing to raise the justification of defense of property.[5] The Commonwealth filed a timely appeal.

_____

when:

> (1) the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;

> (2) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and

> (3) the actor believes that his intervention is necessary for the protection of such other person.

18 Pa.C.S. §506(a)

[4]The charge of involuntary manslaughter was withdrawn by the Commonwealth prior to closing arguments.

[5]This claim was raised in Kirby's "Second Supplemental Post-Sentence Motion", filed by appellate counsel on March 21, 2011. The trial court denied

Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

On December 8, 2011, a panel of the [Superior] Court vacated the trial court's order and remanded the matter for a waiver hearing pursuant to Commonwealth v. Barnett, 25 A.3d 371 (Pa. Super. 2011).[6] Commonwealth v. Kirby, 40 A.3d 188 (Pa. Super. Dec. 9, 2011)(table). On February 6, 2012, Kirby executed a Barnett waiver both in writing and on the record at a hearing. On February 8, 2012, the trial court issued a new order granting Kirby's "Second Supplemental Post-Sentence Motion". On February 27, 2012, the Commonwealth timely filed a notice of appeal.[7]

On appeal, the Commonwealth challenges the trial court's determination that Kirby's counsel was ineffective for failing to argue the justification of defense of property to the jury and failing to request the accompanying jury instruction for the same.

(Doc. 1-1, Commonwealth v. Kirby, No. 435 MDA 2012, Superior Court

Opinion at pp. 15-19). On October 10, 2012, the Pennsylvania Superior Court

reversed the trial court's grant of a new trial and reinstated Petitioner's

---

all other claims and motions. Trial Court Order, 5/27/2011.

[6]Under Barnett, claims of ineffective assistance of counsel are reviewable on direct appeal only if accompanied by a specific waiver of the right to file a first PCRA petition.

[7]The Commonwealth's challenges in the instant appeal are identical to those issues raised in its first appeal in this case; thus, having previously complied with the mandates of Pa.R.A.P. 1935, neither the Commonwealth nor the trial court has filed a supplemental Rule 1925 statement. In fact, the trial court expressly adopted its prior Pa.R.A.P. 1925 opinion in its March 14, 2012 Opinion. Accordingly, we will consider those issues properly preserved by the Commonwealth in its original concise statement filed June 23, 2011.

4

judgment of sentence. Id.

On December 14, 2012, the Pennsylvania Superior Court denied Petitioner's motion for reconsideration. (Doc. 13, at 3).

On June 5, 2013, the Pennsylvania Supreme Court denied Kirby's petition for allowance of appeal. See Commonwealth of Pennsylvania v. Kirby, CP-28-CR-0001820-2009, Docket Sheet at 31.

On July 3, 2013, Kirby filed the instant petition for writ of habeas corpus in which he raises the following challenges to his conviction and sentence:

1.    The trial court's order granting the Petitioner a new trial because of Counsel's ineffectiveness should be reinstated because the Pennsylvania Superior Court mistakenly characterized the Petitioner's trial testimony as inconsistent with the justification defense of property when, in fact, his testimony was not only consistent with such defense but it embodied all the concepts of defense of property, and thus, the Superior Court's decision constitutes an objectively unreasonable application of federal law under 28 U.S.C. §2254(d)(2).

2.    The trial court's order granting the Petitioner a new trial because of counsel's ineffectiveness should be reinstated also because, contrary to the Superior Court's decision, the justification by defense of property defense abandoned by trial counsel was more consistent with the Petitioner's testimony than was self-defense and defense of others, and should have been the focus of trial counsel's efforts; as a consequence, the jury was not permitted to consider the Petitioner's most compelling defense.

(Doc. 1, petition).

## II.   Standards of Review

A habeas corpus petition pursuant to 28 U.S.C. §2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement.  Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-8 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a); Estelle, 502 U.S. at 67-8 (1991); see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

### A.  Exhaustion

It is well-established that a federal court may not entertain the merits of a petition for writ of habeas corpus unless available state court remedies have been exhausted. 28 U.S.C. §2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, state prisoners must invoke one complete round of the state's established appellate review process. Id. at

845. The Respondent concedes that Petitioner has exhausted his state court remedies. The merits of the claims will therefore be addressed.

## B. <u>Merits</u>

Section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. §2254(d). To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified

7

under existing Supreme Court precedent." Id.

Further, under 28 U.S.C. §2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in §2254(e)(1) applies to factual issues, whereas the unreasonable application standard of §2254(d)(2) applies to factual decisions) Matteo, 171 F.3d at 888; Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. §2254(d)(2); Porter v. Horn, 276 F. Supp 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316

8

(1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." Breighner v. Chesney, 301 F. Supp 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. §2254(d)(2) and (f)[8]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. Porter, 276 F. Supp 2d at 296; see also Williams v. Taylor, 529 U.S. 362, 408-09 (2000); Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. Porter, 276 F. Supp 2d at 296; see also Williams, 529 U.S. at 408-09.

In Strickland v. Washington, 466 U.S. 668, 688 (1984), the United States Supreme Court held that to prove a constitutional violation for ineffective assistance of counsel, a habeas petitioner must meet a two-pronged test. The petitioner must show "that counsel's performance was deficient" and that "the

_____

[8]"If the applicant challenges the sufficiency of the evidence adduced in such state court proceeding to support the state court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. §2254(f).

deficient performance prejudiced the defense." Id. at 687; accord Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir.1994).

To demonstrate deficient performance, a petitioner must show that "counsel's performance fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; accord Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; accord Jermyn, 266 F.3d at 282; Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996). If, under the circumstances, counsel's actions might be considered sound trial strategy, the presumption is not rebutted, Strickland, 466 U.S. at 689, because "substantial deference is to be accorded counsel's tactical decisions." United States v. Wiener, 127 F. Supp.2d 645, 648 (M.D. Pa. 2001). A decision supported by "reasonable professional judgment does not constitute ineffective assistance of counsel. See Burger v. Kemp, 483 U.S. 776, 794 (1987). It follows that counsel cannot be deemed ineffective for pursuing a meritless claim. Hartey v. Vaughn, 186 F.3d 367, 372 (3d Cir. 1999).

A petitioner satisfies the second prong and shows prejudice when "there is a reasonable probability that, but for counsel's unprofessional errors, the

10

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; accord Frey v. Fulcomer, 974 F.2d 348, 358 (3d Cir.1992) "Without proof of both deficient performance and prejudice to the defense ... it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable, and the sentence or conviction should stand." Bell v. Cone, 535 U.S. 685, 695 (2002)(internal quotations and citation omitted). In assessing whether the result of the proceeding might have been different, a reviewing court must consider the "totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695; Jermyn, 266 F.3d at 283. However, "a court can choose to address the prejudice prong before the ineffectiveness prong and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." Rolan v. Vaughn, 445 F.3d 671, 678 (3d. Cir. 2006). "The object of an ineffective assistance claim is not to grade counsel's performance. If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

When the Pennsylvania state courts reviewed the claims raised by Kirby,

Strickland's familiar two-pronged test was the "clearly established federal law" applicable to ineffective assistance of counsel claims. Under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective assistance of counsel claims, but is, in substance, identical to the Strickland test. See, e.g., Commonwealth v. Johnson, 565 Pa. 51, 771 A.2d 751, 757 (Pa. 2001). The Third Circuit Court of Appeals has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland. Jacobs v. Horn, 395 F.3d 92, 107 n. 9 (3d Cir. 2005); Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000). Thus, under §2254(d)(1), the relevant inquiry in addressing an ineffectiveness claim that has been adjudicated on the merits is whether the Pennsylvania state court decision involved an unreasonable application of Strickland. Jacobs, 395 F.3d at 107 n. 9; Werts, 228 F.3d at 204.

Petitioner in this case advances no argument that the Superior Court decision is contrary to extant United States Supreme Court precedent. In this regard, Petitioner does not maintain that the ineffective assistance test applied by the state court is inconsistent with the test established in Strickland and developed in its progeny. Thus, each asserted instance of ineffective assistance will be considered against this standard.

Petitioner raises the following two claims of ineffective assistance of

counsel:

> 1.   The trial court's order granting the Petitioner a new trial because of counsel's ineffectiveness should be reinstated because the Pennsylvania Superior Court mistakenly characterized the Petitioner's trial testimony as inconsistent with the justification defense of property when, in fact, his testimony was not only consistent with such defense but it embodied all the concepts of defense of property, and thus, the Superior Court's decision constitutes an objectively unreasonable application of federal law under 28 U.S.C. § 2254(d)(2).

> 2.   The trial court's order granting the Petitioner a new trial because of counsel's ineffectiveness should be reinstated also because, contrary to the Superior Court's decision, the justification by defense of property defense abandoned by trial counsel was more consistent with the Petitioner's testimony than was self-defense and defense of others, and should have been the focus of trial counsel's efforts; as a consequence, the jury was not permitted to consider the Petitioner's most compelling defense.

(Doc. 1, petition).

In post-sentence motions, the trial court addressed Petitioner's claims

of trial counsel's ineffectiveness, and found the following:

> **Justification Defenses**
> At trial, Kirby argued that he shot Buttermore in self-defense and in defense of his children, and the jury was charged on both defenses. A person may use force in defense of self or others when he believes that such force is immediately necessary. See 18 Pa. C.S. §505(a)(self-defense); id. §506(a)(defense of others). A person may justifiably use deadly force where he reasonably believes that such force is necessary to protect against death or serious bodily injury. Id. §505(b)(2). A person may not raise a

13

claim of self-defense if he was the initial aggressor, id. §505(b)(2)(i), or if he had a duty to retreat, id. §505(b)(2)(ii). For defense of others, the duty to retreat is similar, except that a person need not retreat unless he knows he can secure the complete safety of the person he is defending. Id. §506(b). The duty to retreat does not apply if the actor is inside his own dwelling or place of business, unless he is the initial aggressor. Id. §505(b)(2)(i)(A).

In contrast, deadly force in defense of property may be used if: "(A) there has been an entry into the actor's dwelling; (B) the actor neither believes nor has reason to believe that the entry is lawful; and (C) the actor neither believes nor has reason to believe that force less than deadly force would be adequate to terminate the entry."[9] Id. §507(c)(4)(i). The entry requirement is slight, and it does not require a bodily intrusion. See Commonwealth v. Giddins, 686 A.2d 6 (Pa. Super. 1996)(entry requirement for criminal trespass satisfied when defendant stuck screwdriver into door), overruled on other grounds by Commonwealth v. Clark, 746 A.2d 1128 (Pa. Super. 2000)(en banc); Commonwealth v. Peterson, 21 Pa. D. & C. 4th 222 (C.P. Lycoming County 1992)(same, with coat hanger).

The use of deadly force in the defense of property is different from the use of deadly force in self-defense and in defense of others. The former requires that the actor merely believe or have reason to believe that the entry is unlawful and that he "neither believe [] nor [have] reason to believe that force less than deadly force would be adequate to terminate the entry." 18 Pa. C.S. §507(c)(4)(i)(B)-(C). The latter requires the actor to reasonably believe that deadly force is necessary to prevent imminent serious bodily injury or death. Also, the justification for defense of property

---

[9]Deadly force in defense of property may also be used to prevent the trespasser from committing a felony within the dwelling. 18 Pa. C.S. §507(c)(4)(ii)(B).

includes neither a duty to retreat nor a first aggressor rule.

## Application to this case

Kirby argues that his trial counsel was ineffective for failing to request a jury charge on defense of property for two reasons. First, he claims that an instruction was warranted because Kirby believed that Buttermore was about to smash his way into Kirby's house, and that deadly force was his only recourse. Second, he claims that Kirby was justified in using deadly force because of a reasonable belief that Buttermore was about to enter Kirby's house to commit a felony within.

We believe that there is arguable merit to Kirby's claim. There was evidence sufficient to establish that Kirby was entitled to a defense-of-property charge. The facts indicate that Buttermore unlawfully entered Kirby's house when he smashed the window with the baseball bat. The only other elements left to establish were Kirby's belief about the legality of the entry and of his belief of the necessity of using deadly force. There was evidence presented of each. Furthermore, while testifying at the April 15 hearing, Kirby's trial counsel admitted that he could have requested a defense-of-property instruction:

> Q. [by Attorney Foster] So those are the three elements that allow justification of property as a defense. I'm sorry, use of deadly force for the protection as a defense, do you agree with that?
>
> A. Correct.
>
> Q. If the jury would have accepted it, it would be a complete defense to this case?
>
> A. Also correct.

15

(N.T. 4/15/11, at 41-42). There was also ample evidence of property destruction outside the home. Therefore, the court concludes that there is arguable merit to Kirby's claim that his attorney should have sought a defense-of-property instruction.[10]

We next turn to whether Kirby's trial counsel had a reasonable basis for not requesting a defense of property charge. Counsel gave two reasons for not pursuing a defense of property charge. First, he though that such a charge would make it look like Kirby was "hedging his bets":

> Q. [by Attorney Foster] Can you tell us why you did not raise the issue of defense of property in this case?

> A. Because in preparing with my client for trial and in fact even based on the first meeting ever had with Chad, his testimony and his reasons for doing what he did never wavered. It never had anything to do with

---

[10]We find no arguable merit in the other half of Kirby's argument – that he was entitled to a defense-of-property instruction based on a belief that it was necessary to stop Buttermore from committing a felony within Kirby's house, see 18 Pa C.S. §507(e)(4)(ii)(B). There was no evidence at trial that Buttermore committed or intended to commit a felony inside Kirby's house. A prior version of 18 Pa. C.S. §507 allowed the use of deadly force only to prevent the commission of a felony inside a dwelling. In Commonwealth v. Horner, the court held that the defendant was not entitled to a defense-of-property instruction where the victim went *inside* the defendant's house brandishing a baseball bat and screaming, "you're all going to get it now!" 442 A.2d 682, 686 (Pa. 1982). The court read §507 to apply exclusively to felonies against property – not against the person, id. at 686 n.14, and that would seem to apply here. There is no evidence that Buttermore intended to commit a felony against Kirby's property inside his home. Buttermore had damaged some of Kirby's property, but criminal mischief is not a felony if the pecuniary loss is less than $5,000. See 18 Pa. C.S. §3502(b).

the protection of his property. His concern at the time he fired the fatal shot was his belief that someone was going to come inside his house and hurt either him or his children. That's why.

Q. Is that inconsistent with the defense of use of force and protection of property?

A. Not in defense of but I thought it was inconsistent with his testimony. I thought it made us look like we were going to be hedging our bets.

(N.T. 4/15/11, at 39-40, see also id. at 44-45). Second, Kirby's trial counsel testified that he did not want to burden the jury with additional instructions:

Q. [by Attorney Fogal] Do you see the two defenses as mutually exclusive or inconsistent?

A. I don't see them inconsistent necessarily because you can have both of them, but I guess my issue with this was it was never really about anything but his reasonable belief. And when we looked at the jury instructions for justification and based on the jury instruction that says as long as he has a belief that turns out that the jury finds reasonable, even if he's mistaken, to me I wanted them to focus on even if he's mistaken, and I thought we're going to take the focus off even if he's mistaken if we give them 15 pages of jury instructions as opposed to I think the 5 that they got. That's it. Whether it's reasonable or not, I'll let the judge tell me, but that was the basis.

(Id. at 67-68).

In evaluating whether counsel had a reasonable basis for not seeking a defense-of-property charge, Commonwealth v. Buksa, 655 A.2d 576 (Pa. Super. 1995), is instructive. Buksa was convicted of various crimes related to a stabbing. He and the victim, the only witnesses, gave conflicting accounts of what had happened. Similar to this case, Buksa claimed ineffective assistance of counsel for failure to seek a justification charge (in Buksa's case a self-defense charge). Id. at 583. And, like this case, Buksa's lawyers claimed that such an instruction would undermine their trial strategy.

At post-sentence motions hearing, Buksa's trial lawyers (like here Buksa had separate post-sentence motions counsel) admitted that there was legal merit to a self-defense claim. Id. Their stated reason for refusing to request a self-defense charge was that it was inconsistent with their theory of the case: that Buksa accidently stabbed the victim. Id. at 584. Evaluating trial court's strategy, the Superior Court said:

> Counsel's decision was based upon their erroneous belief that a claim of accidental injury had occurred while the defendant was defending himself against attack. Counsel's decision was especially unreasonable in light of the closing arguments which stressed appellant's defense of himself and contended that the injury to the victim had occurred while appellant was attempting to "ward off" the victim's attack. Because the issue of self-defense was placed squarely before the jury by defense argument and because there existed sufficient evidence, which, if believed by the jury, would have permitted a finding of self-defense, the failure of trial counsel to request that the jury be properly instructed regarding principles of self-defense constituted constitutional ineffectiveness.

Id. at 586.

Here, like <u>Buksa</u>, trial counsel has conceded that the evidence would have supported a property-defense charge, and has claimed that he did not seek one because he thought it inconsistent with the evidence and with the Defense theory of the case. The jury was presented with ample evidence of property destruction, and with testimony that Buttermore smashed a window, constituting an unlawful entry of Kirby's house. Similarly, counsel conceded that Kirby was entitled to a property-defense charge. On these facts, we must find that there was no reasonable basis for Kirby's trial counsel to refuse to seek a defense of property jury charge.

Turning to the final prong, we think the prejudice is obvious. Kirby was deprived of a jury instruction that would have provided him with a complete defense. As noted above, there was evidence that Buttermore broke the window of Kirby's house, and that Kirby was attempting to get Buttermore to leave. There is a reasonable probability that the jury would have returned a different verdict had it been charged on justification for use of deadly force in defense of property. Therefore, Kirby was prejudiced by his counsel's failure to seek an instruction for defense of property.

We find that Kirby's trial counsel was constitutionally ineffective. There is arguable merit to Kirby's claim that his lawyer should have sought a jury instruction for defense of property, counsel's decision not to do so was unreasonable, and that course of action resulted in prejudice to Kirby. Therefore, we are required to vacate the conviction and judgment of sentence and order a new trial.

(Doc. 1-1 at 8-13, Order and Opinion of the Honorable Richard J. Walsh, Franklin County Court of Common Pleas).

On appeal, the Pennsylvania Superior Court reversed, finding the following:

19

We begin our review by noting that "[a] trial court has an immemorial right to grant a new trial, whenever, in its opinion, the justice of the particular case so requires. On appeal, we review such a ruling to determine if there was an abuse of discretion." Commonwealth v. Demmitt, 45 A.3d 429, 431 (Pa. Super. 2012) (internal citations and quotations omitted).

In order to obtain relief for an ineffective assistance of counsel claim, a petitioner must establish:

> (1) that the claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and, (3) that, but for the errors and omissions of counsel, there is a reasonable probability, that the outcome of the proceedings would have been different.

Commonwealth v. Zook, 887 A.2d 1218, 1227 (Pa. 2005) (citation omitted). The petitioner bears the burden of proving all three prongs of this test. Commonwealth v. Meadows, 787 A.2d 312, 319-320 (Pa. 2001). "Counsel is presumed to be effective and [the petitioner] has the burden of proving otherwise." Commonwealth v, Holloway, 739 A.2d 1029, 1044 (Pa. 1999) (citations omitted).

> A chosen strategy will not be found to have been unreasonable unless it is proven that the path not chosen offered a potential for success substantially greater than the course actually pursued. Finally, to prove prejudice, a defendant must show that but for counsel's error, there is a reasonable probability, *i.e.*, a probability that undermines confidence in the result, that the outcome of the proceeding would have been different. A defendant's failure to satisfy even one of the three requirements results in the denial of relief.

Commonwealth v. Miller, 987 A.2d 638, 648-49 (Pa. 2009).

Instantly, the trial court determined that trial counsel was ineffective for failing to present the justification of defense of property to the jury. Kirby avers, and the trial court agrees, that there was significant evidence presented to establish that Kirby was justified in using deadly force to protect his property, thus offering a complete defense to the crime of manslaughter. (footnote omitted).

At the hearing on Kirby's post-sentence motions, trial counsel conceded that the justification of defense of property was available to him, and, if believed by the jury, would have offered Kirby a complete defense in this case. N.T., 4/15/2011, at 41-42. However, he testified that throughout his preparation of the case and during trial Kirby maintained he killed Buttermore to prevent harm to himself and his children, a situation potentially justifiable under Sections 505 and 506, supra. Counsel testified that, while the justifications of self-defense, defense of others and defense of property were not mutually exclusive, he did not pursue the justification of defense of property for two reasons; first, he believed that defense of property was inconsistent with Kirby's testimony, and second, he believed that adding the defense of property instruction to the jury charge would detract from the ultimate theory of Kirby's case: that Kirby was operating under a belief that **he and his children** were in danger. N.T., 4/15/2011, at 39-40, 46-47, 67-68.[11]

After thoroughly reviewing the relevant portions of the record, we conclude Kirby has not carried his burden of proving ineffective assistance of trial counsel. While the underlying assertion – *i.e.*, that the justification of defense of property was available to counsel at trial – is of arguable merit, counsel's strategic decision

---

[11]While he initially alleged that Buttermore was attempting to pull himself into Kirby's home through a window at the time he was shot, Kirby later recanted that statement when told that Buttermore was shot in the back. N.T., 10/7/2010, at 138-139.

to forego this argument in the interest of advancing his best defenses, and those most consistent with Kirby's own testimony, was reasonable. See generally Commonwealth v. Paolello, 665 A.2d 439, 455 (Pa. 1995) (holding that counsel cannot be found ineffective for failing to pursue a trial strategy that is in direct conflict with his client's sworn testimony).

Accordingly, as we have determined that trial counsel's strategy has a reasonable basis, our inquiry ceases and counsel's assistance is deemed effective. Id. at 454.

Accordingly, we reverse the trial court's grant of a new trial and reinstate Kirby's judgment of sentence.

(Doc. 1-1, Commonwealth v. Kirby, No. 435 MDA 2012, Superior Court Opinion at pp. 20-23).

Petitioner contends that the Superior Court's reversal of the trial court's grant of a new trial based on the constitutionally ineffective assistance of counsel was unreasonable given the testimony of Petitioner's trial counsel at the evidentiary hearing. Specifically, Petitioner's counsel admitted that a defense-of-property jury instruction could have been requested:

Q: So those are the three elements that allow justification of property as a defense. I'm sorry, use of deadly force for the protection as a defense, do you agree with that?

DEFENSE TRIAL COUNSEL: Correct.

Q: They have all been met under the evidence that was presented

22

in this case?

DEFENSE TRIAL COUNSEL: Correct.

Q: If the jury would have accepted it, it would be a complete defense to this case?

DEFENSE TRIAL COUNSEL: Also correct.

(See Doc. 1, petition at 23, citing N.T. 41-42, April 15, 2011 hearing).

Petitioner further argues that the Superior Court's acceptance of counsel's explanation for foregoing the defense-of-property charge was likewise unreasonable in light of counsel's clear invocation of the defense of property in his explanation. First, Petitioner argues that counsel thought that such a charge would make it look like the Petitioner was "hedging his bets":

Q: Can you tell us why you did not raise the issue of defense of property in this case?

DEFENSE TRIAL COUNSEL:

Because in preparing with my client for trial and in fact even based on the first meeting I had ever had with Chad, his testimony and his reasons for doing what he did never wavered. **It never had anything to do with the protection of property. His concern at the time that he fired the fatal shot was his belief that someone was going to come inside his house and hurt either him or his children**. That's why.

Q: Is that inconsistent with the defense of use of force and protection of property?

DEFENSE TRIAL COUNSEL:
Not in defense of but I thought it was inconsistent with his testimony. I thought it made us look like we were going to be hedging our bets.

(See Doc. 1, petition at 24-25, citing N.T. 39-40, April 15, 2011 hearing, emphasis supplied by Petitioner).

Second, defense trial counsel explained that he did not want to burden the jury with additional instructions by asking for a defense-of-property charge:

Q: Do you see the two defenses as mutually exclusive or inconsistent?

DEFENSE TRIAL COUNSEL:
I don't see them inconsistent necessarily because you can have both of them, but I guess my issue with this was it was never really about anything but his **reasonable belief**. And when we looked at the jury instructions for justification and based on the jury instruction that says as long as he has a belief that turns out that the jury finds reasonable, even if he's mistaken, to me I wanted them to focus on even if he's mistaken, and I thought we're going to take the focus off even if he's mistaken if we give them 15 pages of jury instructions as opposed to I think the 5 that they got. That's it. Whether it's reasonable or not, I'll let the judge tell me, but that was the basis.

(Doc. 1, petition at 25, citing N.T. 67-68, April 15, 2011 hearing (emphasis supplied by Petition)). Thus, Petitioner concludes that the Superior Court's

24

decision is unreasonable in light of counsel's testimony that his strategy was about Kirby's "belief that someone was going to **come inside his house and hurt either him or his children**," (Doc. 1, petition at 25, emphasis supplied by Petitioner), a belief that Petitioner's contends is more in line with defense of property than self-defense.

In addition to counsel's testimony, Petitioner asserts that the state court unreasonably applied Strickland to the facts of his case, as elicited by Petitioner's direct testimony, and cross examination, which Petitioner believes was consistent with defense-of-property as follows:

> Q: What did you see at the moment that he [sic] shot?
> A: Andy Buttermore was standing in front of the window.
> Q: Do you know why?
> A: No.
> Q: Why did you think he was there?
> A: Had no idea. **Thought he was coming. What else was he doing? Busting the window**.
> Q: Prior to that had he done anything to the inside of your house.
> A: No.
>
> * * *
>
> Q: Anybody ask you what happened?
> A: Yes, Trooper Hertzog did.
> Q: Do you remember what you told him?
> A: Told him **I thought he was coming in the house**.

25

\* \* \*

Q: Is it fair to say that you say repeatedly during this interview that **he was coming into the house and he looked like he was trying to come in**?

A: **Correct**.

\* \* \*

Q: You said he was trying to get in.

A: I said it looked like he was coming in.

\* \* \*

Q: But you said he was coming into the house?

A: I said I thought he was coming into the house, yes.

\* \* \*

Q: Why don't you follow the paper in front of you. It will be a little easier. Trooper Grove says at the very top that was your – what were you trying to accomplish by pulling the trigger. At that moment of time what were you trying to accomplish?

A: Stop him.

Q: What was your answer that night?

A: He threatened us.

Q: Go ahead and keep on going.

A: Right there at the house. **Then he was coming in. I thought he was coming.**

Q: **So your purpose was to stop him**?

A: **Correct**.

Q: His face was at the window standing right there and you shot a shotgun at him. **What was your purpose, to stop him**?

A: **Correct**.

Q: **That was your only purpose**?

A: **Yes**.

Q: Face is at the glass, shotgun blast to it, that was the only purpose, you can't say it?

A: Say what?

Q: What was your purpose?

A: **To stop him**.

\* \* \*

Q: Half way down there it says Trooper Grove asks, well, **what was your fear if he got in**? What was the answer to that?

A: He was wanting to hurt me.

\* \* \*

Q: Up at the top, what was your response to that?

A: I was scared, I mean I guess it was self-defense pretty much, I don't know. I did – what do you do when someone threatens you and your kids. I mean, **if they are trying to break into your house, that's why we have guns**.

\* \* \*

Q: ...Is it your testimony today, Mr. Kirby, when the man's standing outside of your window he hits it with a bat and then stands there and what you see, what's in your mind is his face – this is your window, you in danger of immediate death and serious bodily injury. I want you to search your heart and answer this truthfully. A man is standing at window?

A: No.

27

(Doc. 1, petition at 29-33, 39, citing N.T. 10/7/10, p. 109: 1-11; p. 110: 15-18; p. 150: 1-4, 24-25; p. 151: 18-19; p. 159: 13; p. 160: 11-15; p. 163: 8-15, emphasis supplied by Petitioner).

Petitioner contends that the only time he testified of being in immediate fear of death or serious bodily injury, consistent with the defense of self-defense, was in response to the following hypothetical question posed by counsel:

> Q: Now, if that man is standing at your window, spent the last half hour trashing your house and threatening to kill your kids, what's your answer to that last question, are you now in fear of death or serious bodily injury?
> A: Yes.

(Doc. 1, petition at 39, citing N.T. 10/7/10, p. 163: 20-24)

The Supreme Court in Harrington v. Richter, 562 U.S. 86 (2011) discussed how to assess a Strickland claim in the AEDPA context:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of §2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state

court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

Richter, 562 U.S. at 101 (internal citations and quotation marks omitted). The Richter court noted that even under a *de novo review* of Strickland, counsel's representation should be judged under a "most deferential" standard because, "[u]nlike a later reviewing court, [trial counsel] observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Id. at 105. In that light, the Richter court held that, under AEDPA, Strickland's "high bar" becomes even more difficult to surmount:

> Establishing that a state court's application of Strickland was unreasonable under §2254(d) is all the more difficult. The standards created by Strickland and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under §2254(d). When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id. (internal citations and quotation marks omitted).

Under the AEDPA, our review asks whether the Superior Court's determination—that trial counsel's actions were not without a reasonable basis—"was so lacking in justification that there was an error well understood

29

and comprehended in existing [Supreme Court precedent] beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 102–103. This Court finds that the Superior Court's decision was not so lacking here.

Although the Superior Court determined that the availability of the defense-of-property to defense counsel was of arguable merit, they found that counsel's strategic decision to forego the defense-of-property in favor of self-defense was reasonable, in light of counsel's testimony that it was his strategy to advance the best defense for Kirby. This Court is bound by the Superior Court's finding, which is presumed to be correct because Kirby has not rebutted it by clear and convincing evidence. See 28 U.S.C. §2254(e)(1).

Petitioner maintained that the reason he shot and killed Buttermore was because, after a heated exchange in his yard, in which Buttermore was not deterred by Kirby brandishing a pistol, Kirby believed that when Buttermore broke the glass, which at the time, Kirby believed it was the glass on the front door,[12] he was going to come inside the house and hurt either Kirby or his

---

[12]   Q: You said you though he as coming into the house, correct?
       A:  Correct.
       Q:  It's a door, correct?
       A:  Correct.
       Q: You said you thought he was coming in the door, that was in your mind when you heard the glass, you said that, correct?
       A: I said I thought the door glass broke, yes.
(Doc. 13-7 at 30, N.T. 10/7/10, p. 137: 11-19).

children. Kirby's defense of himself and his family began with the explanation he provided the police when interviewed on the night of the shooting,[13] continued throughout his preparation with counsel for trial,[14] and was elicited through testimony at trial. As such, Kirby reasonably believed that deadly force was necessary to prevent imminent serious bodily injury or death to either

---

[13]  Q: Why don't you follow the paper in front of you. It will be a little easier. Trooper Grove says at the very top that was your – what were you trying to accomplish by pulling the trigger. At that moment of time what were you trying to accomplish?
A: Stop him.
Q: What was your answer that night?
A: He threatened us.
Q: Go ahead and keep on going.
A: Right there at the house. Then he was coming in. I thought he was coming.
Q: So your purpose was to stop him?
A: Correct

(Doc. 1-1 at 45, N.T. 10/7/10, p. 159: 13-25).

[14]  Q: Can you tell us why you did not raise the issue of defense of property in this case?

A: Because in preparing with my client for trial and in fact even based on the first meeting I had ever had with Chad, his testimony and his reasons for doing what he did never wavered. It never had anything to do with the protection of property. His concern at the time that he fired the fatal shot was his belief that someone was going to come inside his house and hurt either him or his children. That's why.

(Doc. 1-1 at 52, N.T. 4/15/11, p. 38: 12-22).

himself or his family. Based on these beliefs, counsel chose the strongest argument that he believed would best advance his client's interests. Counsel testified that his reasoning for proceeding solely on self defense was that he did not want to detract from the jury's focus on what he believed was their strongest defense and make it "look like we were going to be hedging our bets." (Doc. 1-1 at 53, N.T. 4/15/11, p. 39: 1-2). Specifically, counsel explained his reasoning as follows:

> Q: So did you have a strategic reason to give up a potential total defense of Mr. Kirby to this charge, one that required a lessor threshold to prevail than self defense? What was your reason for not pursuing that?
>
> A: Two reasons. One was, as I indicated before, all along his belief was what was going to happen if somebody got into his house to either harm himself or his children, and in the final section of, I think it's Subsection 4 that you had read, it still requires there to be a belief, a reasonable belief on his part that in order to prevent the entry deadly force was required. Very similar to the self defense claim.
>
> So as opposed to saying, well, we're not sure, ladies and gentlemen of the jury, if we think that he was using deadly force for the purpose of keeping somebody out of his house or if he was using deadly force for the purpose of protecting himself and his children. We're going to offer both theories.
>
> We had one theory of the defense and that was it was his defense that he was protecting himself and his children from this guy wielding a bat.

(Doc. 1-1 at 57-58, N.T. 4/15/10, pp. 43-44: 23-22).

Even though trial counsel's strategy was ultimately unsuccessful, this Court must "eliminate the distorting effects of hindsight," and "indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Recognizing that "the standards created by Strickland and §2254(d) are both highly deferential, and when the two apply in tandem, [our] review [should be] doubly so," there is a "reasonable argument that counsel satisfied Strickland's deferential standard." Richter,   562 U.S. at 101 (internal citations and quotation marks omitted). Accordingly, the Superior Court's determination here was not an unreasonable application of Strickland and Kirby is not entitled to federal habeas relief on his claim of counsel's ineffectiveness for failing to raise a defense-of-property claim.

## III.   <u>Certificate of Appealability</u>

Pursuant to 28 U.S.C. §2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. §2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case debatable. Accordingly, no COA will issue.

## IV.  **Conclusion**

In light of the foregoing, the petition for writ of habeas corpus will be **DENIED**. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: August 19, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-1836-02.wpd

34